UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


DAVID W. FIORE,                          :
                    Plaintiff,           :
                                         :
      v.                                 :          CA 11-210 S
                                         :
DENISE D. DUPRE,                         :
STEPHEN J. CAPINERI,                     :
BARBARA E. GRADY,                        :
CHRISTINE M. RICHARDS (GOUGH),           :
DAVID K. RICHARDS,                       :
CHARLOTTE M. RICHARDS,                   :
STATE OF RHODE ISLAND,                   :
(AS MUNICIPAL CORPORATION),              :
                    Defendants.          :



**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

      This is an action brought pursuant to 42 U.S.C. § 1983 for the

alleged violation of Plaintiff's civil rights.  Before the Court is

the Application to Proceed without Prepayment of Fees and Affidavit

(Docket ("Dkt.") #2) ("Application to Proceed without Prepayment of

Fees" or "Application") filed by Plaintiff David W. Fiore

("Plaintiff" or "Fiore").[1]  Because I conclude that the Application

_____

[1] 28 U.S.C. § 1915(a) provides in relevant part:

      (a)(1)  Subject to subsection (b), any court of the United
      States may authorize the commencement, prosecution or defense
      of any suit, action or proceeding, civil or criminal, or
      appeal therein, without prepayment of fees or security
      therefor, by a person who submits an affidavit that includes
      a statement of all assets such [person] possesses that the
      person is unable to pay such fees or give security therefor.
      Such affidavit shall state the nature of the action, defense
      or appeal and affiant's belief that the person is entitled to
      redress.

should be denied, it is addressed by way of this Report and Recommendation. See Lister v. Dep't of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005)(explaining that because denial of a motion to proceed in forma pauperis is the functional equivalent of an involuntary dismissal, a magistrate judge should issue a report and recommendation for a final decision by the district court).

## I. Facts

On January 29, 2001, Fiore was sentenced to serve a federal prison sentence. See Complaint (Dkt. #1) at 4. He left all of his personal belongings in the possession of his then wife, Defendant Christine M. Richards (Gough) ("Christine"), and her parents, Defendants Charlotte M. Richards ("Charlotte") and David K. Richards ("David"). See id. at 4, 7. On March 1, 2006, Christine filed for divorce from Fiore in the Kent County Family Court. See id. at 4.

The divorce case was heard on June 21, 2006, by Associate Family Court Justice Pamela Macktaz ("Judge Macktaz"). See id. Fiore apparently participated in the hearing by telephone and requested that a third party evaluate his daughter Nicole "to determine what Nicole wanted for visitation and contact with her father."[2] Id. Judge Macktaz responded that if an appropriate

28 U.S.C. § 1915(a)(1).

[2] The excerpt of the transcript from the June 21, 2006, hearing which Fiore has attached to his Complaint reflects that a "MR. HOTHENBERG," Complaint, Appendix ("App.") at 1, asked the hearing justice

motion requesting such action were filed, then "somebody will be
Court appointed to check with this child."  Complaint, Appendix
("App.")  at 2.

On June 23, 2006, Fiore filed a pro se letter of appeal in the
divorce case, but this document was not docketed.[3]  <u>See</u> Complaint
at 4.  Three days later he submitted a motion requesting a third
party evaluation of his daughter.[4]  <u>See</u> <u>id.</u>  Fiore alleges that
this motion was received by the Family Court at 2:22 p.m. on June
29, 2006, and that this information was stamped on the motion.  <u>See</u>
<u>id.</u>; <u>see also</u> <u>id.</u>, App. at 5.  However, the motion "was not placed
on the Court['']s Docket Sheet."  Complaint at 4.  A final judgment

---

whether the court would "appoint somebody," <u>id.</u> at 2, to determine
whether the child was "emotionally up to visiting and not having it have
a negative effect on her," <u>id.</u> As Fiore states in the Complaint that he
made this request, the Court assumes that Mr. Hothenberg was representing
or assisting Fiore in some capacity at the hearing, although the precise
nature of their relationship is not evident in the excerpt of the
transcript provided.

[3] The letter Fiore identifies as constituting his pro se appeal is
dated June 23, 2006, and stamped as being received by the Kent County
Family Court on July 11, 2006.  <u>See</u> Complaint, App. at 3.  The missive
is addressed to Principal Supervisory Clerk Denise D. Dupre ("Clerk
Dupre") and requests that she "forward any papers available regarding the
procedure to appeal the judgment of divorce."  <u>Id.</u>

[4] The motion, entitled "MOTION FOR CHILD VISITATION," Complaint,
App. at 4, states in its entirety:

> MOTION BY THE PRO-SE PRISONER DEFENDANT FOR THE HONORABLE
> COURT'S ORDER OF EVALUATION OF THE LITIGANT'S SIX YEAR OLD
> CHILD NICOLE FIORE CONCERNING WHAT THE CHILD WANTS FOR
> VISITATION WITH HER FATHER THE DEFENDANT IN ACCORDANCE WITH
> THE JUDGE MACKTAZ RULING ON JUNE 21, 2006 ALLOWING THE INSTANT
> MOTION TO BE FILED AFTER THE DIVORCE TRIAL.

Complaint, App. at 4 (underlining omitted).

in the divorce action was granted on October 10, 2006. See
Complaint at 5.

Fiore alleges that on December 3, 2006, Christine, Charlotte,
and David failed to hand over to Fiore's family personal property
in their possession which Fiore was awarded at the June 21, 2006,
divorce hearing. Id. He further alleges that on December 13,
2006, he submitted a motion for in forma pauperis status ("motion
for IFP") so that he could obtain a transcript of the divorce
hearing. Id. The transcript was needed to support a motion to
compel Christine to comply with the judgment of divorce with
respect to the property awarded to Fiore. Id. Although the motion
for IFP was sent by certified mail, see id., App. at 7, it was not
time/date stamped and not placed on the docket, see Complaint at 5.
Fiore alleges that this motion is missing from the court file. Id.

On December 14, 2006, Fiore wrote to the clerk inquiring about
the status of his motion for an evaluation. See id. Fiore also
requested an updated docket sheet. See id. Although this letter
was received by the Family Court on December 20, 2006, Fiore never
received a reply. Id.

Fiore was released from prison on January 7, 2010. Id. On
February 24, 2010, he appeared before Associate Family Court
Justice Stephen J. Capineri ("Judge Capineri"). Id. Fiore alleges
that Judge Capineri granted him "In Forma Pauperis, Motion for
Visitation, DR6, and Entry of Appearance." Id. Christine's

4

counsel, Defendant Barbara E. Grady ("Attorney Grady"), filed a motion to dismiss. Complaint at 5. It is not entirely clear from the Complaint what Attorney Grady was moving to dismiss, but presumably it related to some motion or pleading which Fiore had filed pertaining to the divorce case. Id. On April 13, 2010, Judge Capineri heard the motion to dismiss and granted it. Id. at 6. Fiore alleges that the judge denied him "any opportunity to establish this instant claim."[5] Id.

Fiore filed a motion for reconsideration on April 19, 2010, and a second motion for reconsideration one week later. Id. The second motion for reconsideration, according to Fiore, pertained to "a due process violation on December 12, 2006[,] for a request of the June 21, 2006, Divorce Trial Transcripts after ... Christine ... David ... and Charlotte ... failed to hand over the property awarded to Fiore during the divorce hearing of June 21, 2006." Id. The Complaint alleges "that Justice Forte 'granted' Fiore's Reconsideration Motion(s) and let summons issue returnable by May 19, 2010." Id. (italics omitted).

Christine failed to appear in court on May 19, 2010, although she had been "legally summoned." Id. Fiore alleges that a sheriff came from the area of Judge Capineri's chambers and told him that Attorney Grady had called Judge Capineri and that the judge had

---

[5] It is not entirely clear from the Complaint to what "this instant claim," Complaint at 6, refers.

continued the hearing until July 20, 2010.  Complaint at 6.  Fiore asked to see Judge Capineri because he objected to the continuance, but his request was denied.  Id.  According to Fiore, he stated: "I am filing an objection on the record that this is not fair, how can the Plaintiff's counsel call the judge and be granted a continuance.  [Christine] hasn't even shown up and ... they are in default."  Id.

On July 20, 2010, Fiore and Attorney Grady appeared for the hearing.  Id.  Christine did not appear.  Id.  Fiore alleges that Christine's failure to attend the hearing should have resulted in a default and that the court should have granted his claim.  Id. Fiore additionally alleges that during the hearing Judge Capineri stated that no appeal had been filed in the case even though Fiore had told him that the letter for an appeal was in the case file. Id. at 7.  Fiore asserts that Judge Capineri denied him the opportunity to present his case and to hire counsel and that on August 3, 2010, he "again dismissed this instant claim."[6]  Id.

Fiore alleges that at a hearing held on February 4, 2011, Judge Capineri and Attorney Grady conspired to deprive Fiore of his personal property which had been awarded to him in the June 21, 2006, divorce hearing.  Id.  Fiore additionally alleges that at the

---

[6] See n.5; see also Complaint at 9 (alleging that "this Court (Kent County Family Court) has 'jurisdiction' to hear his claim of due process violation as a federal question(s) regarding his right of 'due process,' access to the courts, liberty interest, property, and equal protection while incarcerated.")(bold and underlining omitted).

February 4, 2011, hearing he withdrew "without prejudice," Complaint at 7 (bold and italics omitted), his complaint against Christine and her parents for the return of his personal property, but that the order submitted by Attorney Grady after the hearing stated that "Fiore's Motion for Return of Certain Property is dismissed with prejudice at the request of Fiore after taking testimony," id. (bold and italics omitted).  According to Fiore, Attorney Grady "intentionally submitted this order to deprive Fiore of his right for redress of grievance on the missing personal property."  Id.

On February 22, 2011, Fiore filed an objection to the order which Attorney Grady had submitted.  Id.  The next day Attorney Grady filed a motion to enter the order which stated that Fiore's motion for return of certain personal property was dismissed with prejudice.  Id.  On February 26, 2011, Fiore filed a second objection to the order submitted by Attorney Grady and requested a hearing on April 26, 2011, "to present evidence against [Attorney Grady's] false claim."  Id.

Attorney Grady sent Fiore a letter on April 12, 2011, which stated that she would be out of state on April 26th and would be requesting that the Court continue the motions scheduled for that date.  Id. at 8.  Fiore appears to allege that Attorney Grady had agreed to the April 26th date in February but waited until two weeks before the hearing before advising him that she would be out of

state.  Complaint at 8.

On April 26, 2011, Fiore went to the court and spoke with the clerk.  Id.  The clerk advised him that the hearing had been continued to June 1, 2011.  Id.  Fiore asked the clerk how this could have happened as he opposed any continuance and court had not yet been convened for the calling of the calendar.  Id.  The clerk told Fiore that Attorney Grady "had the Chief Judge sign off on her request for a continuance."  Id.

## II.  Claims

In his "Statement of the Case", id. (bold and italics omitted), Fiore alleges that Denise D. Dupre ("Clerk Dupre") negligently failed to docket Fiore's pro se pleadings in the court's docket and also failed to respond to his letters for necessary documents to file an appeal.  Id.  He claims that this violated his "right of access to the Courts."  Id.

With respect to Judge Capineri, Fiore complains that the judge intentionally and wrongfully failed to correct the 2006 due process violation which Fiore brought to his attention three times.  Id. at 9.  Fiore also charges that Judge Capineri and Attorney Grady conspired to deprive him of redress on May 19, 2010, by granting her a continuance.  Id.

Fiore alleges that Christine, Charlotte, and David retained and/or stole the personal property which he left in their possession.  Id. at 8.  He avers that when his family went to

8

retrieve the property on December 3, 2006, Christine, Charlotte, and David refused to turn the items over and stated that they did not exist. Complaint at 8. Fiore further alleges that these three Defendants, acting with or through Attorney Grady, deprived Fiore of personal property. Id.

In a section entitled, "Cause of the Action," Fiore alleges that he has been injured by the actions of Clerk Dupre, Judge Capineri, Attorney Grady, Christine, David, Charlotte, and the State of Rhode Island ("Defendants") and that those actions[7] have violated his rights under the First, Seventh, and Fourteenth Amendments to the United States Constitution. Id. at 10. As relief, Fiore seeks: (1) a declaration that Defendants' actions violated the aforementioned constitutional rights; (2) an order requiring that the child be returned to Rhode Island[8] for a third-party evaluation, and ruling that the October 10, 2006, final judgment of divorce is moot; (3) an order requiring that the U.S. Attorney for the District of Rhode Island and the Attorney General of the State of Rhode Island conduct a criminal investigation into Defendant State of Rhode Island (the "State"); (4) an award of nominal damages of one dollar from Defendants; (5) an award of one

---

[7] In the same paragraph, Fiore also refers to Defendants' "bre[a]ch of fiduciary duty; deprivation of rights; the failure to investigate the incident; fraud; and the denial of honest governmental services ...." Complaint at 10.

[8] The Complaint indicates that the child is now a resident and domiciled inhabitant of Maryland and that she has been so domiciled for more than three years. Id. at 5 n.5.

million dollars in compensatory damages jointly and severally against all Defendants; (6) an award of one million dollars in punitive damages against each Defendant; and (7) court costs and attorney's fees.  Complaint at 10-11.

## III.  Pro Se Status

Plaintiff is proceeding pro se, and his Complaint is held to a less stringent standard than one drafted by a lawyer.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972).  It is to be "read ... with an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991).  A court is required to liberally construe a pro se complaint.  See Strahan v. Coxe, 127 F.3d 155, 158 n.1 (1st Cir. 1997); Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993).  At the same time, a plaintiff's pro se status does not excuse him from complying with procedural rules.  See Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 24 n.4 (1st Cir. 2000); see also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009)(explaining that "where the well-pleaded facts [of the complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief'")(quoting Fed. R. Civ. P. 8(a)(2)[9]).  The Court construes

---

[9] Federal Rule of Civil Procedure 8(a) provides in relevant part:

(a) Claim for Relief. A pleading that states a claim for relief must contain:

Plaintiff's Complaint liberally in deference to his pro se status.

**IV. Discussion**

As explained below, Plaintiff's Complaint fails to state a claim pursuant to 42 U.S.C. § 1983 upon which relief can be granted against any Defendant.

**A. Clerk Dupre**

The Complaint alleges that Clerk Dupre negligently failed to docket Fiore's pro se pleadings and failed to respond to his letters for documents to file an appeal. See Complaint at 8. Fiore contends that by these failures Clerk Dupre violated his civil rights and deprived him "of access to the courts, of life, liberty, or property, and of equal protection (without due process)." Id. at 4 (bold and italics omitted); see also id. at 8 (alleging that Clerk Dupre violated "Fiore's right of access to the [c]ourts."). The pleadings and letters at issue are: (1) his June 23, 2006, pro se letter of appeal, see id. at 4; (2) his June 26, 2006, motion for an evaluation by a third party, see id.; (3) his July 13, 2006, reply to plaintiff's objection of July 5, 2006,

----

> ....
>
>> (2) a short and plain statement of the claim showing that the pleader is entitled to relief ....
>
> Fed. R. Civ. P. 8(a)(2).

relative to his motion for a third party evaluation,[10] see id. at 5; (4) his December 13, 2006, motion for transcripts of the divorce trial,[11] see id.; and (5) his December 14, 2006, letter requesting the status of the pending motion, see id.

### 1. Statute of Limitations

Although section 1983 provides a federal cause of action, the length of the limitations period is drawn from state law. Harrington v. City of Nashua, 610 F.3d 24, 28 (1st Cir. 2010). The federal court must borrow the limitations period from the forum state. Id.; see also Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992)("The Supreme Court directs federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 to borrow the statute of limitations applicable to personal injury actions under the law of the forum state.")(quoting Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991)(per curiam)); Walden, III, Inc. v. Rhode Island, 576 F.2d 945, 946-47 (1st Cir. 1978)(affirming that Rhode Island's three year statute of limitations for personal injury actions applies to civil rights actions brought under 42 U.S.C. § 1983). Thus, Fiore's claims under § 1983 are subject to a three

---

[10] In including this pleading as among those on which Fiore bases his claims against Clerk Dupre, the Court reads his pro se Complaint generously. The Complaint does not identify this failure as being a basis for the deprivation of access to the courts claim. In contrast, the failure to docket his pro se letter of appeal and his motion for a third party evaluation are explicitly identified as violations of his civil right of access to the courts. See Complaint at 4.

[11] See n.10.

year statute of limitations. <u>Dandy v. Rhode Island</u>, C.A. No. 10-286ML, 2010 WL 3074353, at *2 (D.R.I. July 15, 2010)("the applicable statute of limitations for a § 1983 claim in this District is three years").

While state law determines the applicable statute of limitations, federal law governs the accrual date in § 1983 actions, and, therefore, such date is governed by federal rules conforming in general to common-law tort principles. <u>Harrington</u>, 610 F.3d at 28. The accrual date for a § 1983 action is the date when the potential plaintiff knew or should have known that he was harmed. <u>Cao v. Commonwealth of Puerto Rico</u>, 525 F.3d 112, 115 (1st Cir. 2008); <u>see also</u> <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 576 (5th Cir. 2001)("Actual knowledge is not required if the circumstances would lead a reasonable person to investigate further.")(internal quotation marks omitted); <u>id.</u> at 576 n.11 ("Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof.")(internal quotation marks omitted).

To the extent that Fiore may claim that he did not discover Clerk Dupre's negligence until after February 18, 2010, when he went to the Kent County Family Court Clerk's Office, <u>see</u> Complaint at 5, and that, therefore, the statute of limitations did not begin to run until that date, such contention is untenable. A plaintiff

must act with reasonable diligence with respect to his rights. Lynch v. John W. Kennedy Co., No. PB 03-3355, 2005 WL 1530469, at *3 (R.I. Super. Ct. June 23, 2005); see also Rakes v. United States, 442 F.3d 7, 26 (1st Cir. 2006)(affirming district court's finding that statute of limitations "was not tolled ... because plaintiffs had not acted with diligence in investigating their claims"); id. (holding that a plaintiff who argues for delayed accrual under the discovery rule must "exercise diligence in investigating a claim or risk losing it"). Certainly, at least by December 31, 2007, when more than a year had elapsed since Fiore's last letter to the clerk and he had received no response and also no advisement regarding his appeal or motion for third-party evaluation, reasonable diligence required Fiore to make further inquiry regarding the status of these matters. See Moore v. Rhode Island Bd. of Governors for  Higher Educ., 18 A.3d 541, 554-45 (R.I. 2011)(explaining that where the "discovery rule"[12] applies the

---

[12] The Rhode Island Supreme Court explained the "discovery rule" in Mills v. Toselli, 819 A.2d 202 (R.I. 2003):

> "In some 'narrowly circumscribed factual situations,' ... when the fact of the injury is unknown to the plaintiff when it occurs, the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct." Martin v. Howard, 784 A.2d 291, 299 (R.I. 2001)(quoting Renaud v. Sigma-Aldrich Corp., 662 A.2d 711, 714 (R.I. 1995)).

...

statute of limitations begins to run when the plaintiff, in the exercise of reasonable diligence, should have discovered the injury or some injury-causing wrongful conduct); <u>see also</u> <u>Ryan v. Roman Catholic Bishop of Providence</u>, 941 A.2d 174, 182-83 (R.I. 2008)(holding that "[m]ere silence or inaction on the part of the defendant" does not toll the statute of limitations); <u>cf.</u> <u>Owen v. Gen. Motors Corp.,</u> 533 F.3d 913, 920 (8th Cir. 2008)("To avoid the running of the statute of limitations, the fraudulent concealment must be something more than mere silence on defendant's part ....")(internal quotation marks omitted).

Thus, the statute of limitations with respect to the claims against Clerk Dupre commenced to run, at the latest, as of December

---

"[T]he heart of the discovery rule is that the statute of limitations does not begin to run until the plaintiff 'discovers, or with reasonable diligence should have discovered, the wrongful conduct of the [defendant].'" <u>Supreme Bakery, Inc. v. Bagley</u>, 742 A.2d 1202, 1204 (R.I. 2000)(quoting <u>Benner v. J.H. Lynch & Sons, Inc.</u>, 641 A.2d 332, 337 (R.I. 1994)).

> "The reasonable diligence standard is based upon the perception of a reasonable person placed in circumstances similar to the plaintiff's, and also upon an objective assessment of whether such a person should have discovered that the defendant's wrongful conduct had caused him or her to be injured. If a reasonable person in similar circumstances should have discovered that the wrongful conduct of the defendant caused her injuries as of some date before the plaintiff alleged that she made this discovery, then the earlier date will be used to start the running of the limitations period." <u>Martin</u>, 784 A.2d at 300 (citing <u>Anthony v. Abbott Laboratories</u>, 490 A.2d 43, 47 (R.I. 1985)).

<u>Mills v. Toselli</u>, 819 A.2d at 205.

31, 2007, <u>see</u> <u>id.</u>, if not earlier, <u>see</u> <u>Curtis v. Boggs</u>, No. 3:00-CV-2232-X, 2001 WL 649735, at *4 (N.D. Tex. June 6, 2001)(holding that claims against court clerks, for allegedly denying prisoner access to the courts by refusing to file stamp his complaint and by posting his appellate brief as not timely received, accrued "when the fact of that denial was discovered or, by exercise of reasonable diligence, should have been discovered. In other words, the claims accrued on the dates the court clerks allegedly denied him access to the courts.")(internal citation omitted). Because the instant action was not filed until May 20, 2011, the claims against Clerk Dupre are barred. <u>See</u> <u>Salas v. Pierce</u>, 297 Fed. Appx. 874, 878 (11th Cir. 2008)("[B]ecause [prisoner] waited more than two years after [date by which he should have known he had been injured] to file his claims against the court reporter and clerk, the district court did not err by dismissing his complaints as time barred."); <u>Sims v. Kernan</u>, 72 F.Supp.2d 944, 951 (N.D. Ind. 1999)(applying two year statute of limitations and finding that § 1983 claim based on alleged failure of clerk's office to send copies of orders to inmate was "beyond the statute of limitations"); <u>see also</u> <u>Street v. Vose</u>, 936 F.2d 38 (1st Cir. 1991)("a complaint which states a claim that appears to have expired under the applicable statute of limitations may be dismissed as frivolous" under 28 U.S.C. § 1915[13]).

_____

[13] <u>See</u> n.16.

The fact that Fiore was incarcerated until January 2010 does not toll the statute of limitations.  See Lacedra v. Donald W. Wyatt Det. Facility, 334 F.Supp.2d 114, 127 n.7 (R.I. 2004) (agreeing that three year statute of limitations period for § 1983 "was not tolled while [p]laintiff was incarcerated").

## 2.  **Failure to State Constitutional Claim**

Fiore's allegations against Clerk Dupre also fail to state a constitutional claim.  See Lee v. Casey, 771 F.Supp. 725, 729 (E.D. Va. 1991)(holding that negligent conduct in failing to file letter as notice of appeal did not give rise to a constitutional claim); see also Tucker v. I'Jama, 361 Fed. Appx. 405, 407-08 (3rd Cir. 2010)(holding that conduct of state court clerk was at most negligent "which is an insufficient basis for liability on a denial of access claim under 42 U.S.C. § 1983"); Allen v. Duckworth, 6 F.3d 458, 461 (7th Cir. 1993)(holding that "a negligent omission by a court clerk ... is not actionable in a suit under 42 U.S.C. § 1983"); Dawkins v. Cooper, No. C.A. 10-494 ML, 2011 WL 835639, at *2 (D.R.I. Feb. 9, 2011)("As [p]laintiff's complaint against [Rhode Island Superior Court] Clerks is merely one of negligence, it does not support a § 1983 claim for violation of due process protections."); Bramlett v. Woodburn, No. 2:10-CV-0238, 2011 WL 195674, at *2 (N.D. Tex. Jan. 6, 2011)("As to defendant [district court clerk, who waited almost an entire year to send plaintiff notice of dismissal], plaintiff has only alleged facts sufficient

to state a claim of negligence, nothing more.  Section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care."); <u>Tate v. Townsend</u>, No. 09-CV-12234, 2009 WL 2144419, at *4 (E.D. Mich. July 13, 2009)("To establish an access to the courts violation under § 1983, a plaintiff must prove that the violation was intentional, not merely negligent."); <u>Bibby v. Sparr</u>, No. CA 08-333 ML, 2009 WL 159690, at *4 (D.R.I. Jan. 22, 2009)("As plaintiff's complaint against [superior court clerks] is merely one of negligence, it does not support a § 1983 claim for violation of due process protections."); <u>Breckenridge v. Thompson</u>, Civil Action No. 7:08-cv-00243, 2008 WL 899225, at *1 (W.D. Va. Apr. 1, 2008)(dismissing action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted where inmate's allegations at most "imply that ... court employees negligently delayed the official decision concerning his criminal complaints, and such acts of negligent interference with an inmate's access to courts are not actionable under § 1983"); <u>Tapp v. Wilkinson</u>, No. 07-CV-1804, 2007 WL 4699148, at *1 (W.D. La. Dec. 14, 2007)("[A]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983.").  Accordingly, Fiore's Complaint fails to state a claim against Clerk Dupre upon which relief may be granted pursuant

to 42 U.S.C. § 1983.[14]

**B. Judge Capineri**

Fiore alleges that Judge Capineri violated his right to be present by speaking privately with Attorney Grady when she requested a continuance. Complaint at 6. It is well established that judges are absolutely immune from suit for their judicial acts unless they act in the clear absence of all jurisdiction. See

---

[14] It also bears noting that some courts have held that court clerks like Clerk Dupre are protected by judicial immunity or quasi-judicial immunity. See Trackwell v. United States Gov't, 472 F.3d 1242, 1247 (10th Cir. 2007)(stating that "when a court clerk assists a court or a judge in the discharge of judicial functions, the clerk is considered the functional equivalent of the judge and enjoys derivative immunity"); McLarnon v. United States, Civil Action No. 09-10049-RGS, 2009 WL 1395462, at *4 (D. Mass. May 19, 2009)("Judicial employees, such as [clerks and court reporter] have quasi-judicial immunity when they perform tasks which are an integral part of the judicial process."); id. (dismissing § 1983 claims because plaintiff "makes no allegations concerning these court personnel which fall outside their performance of judicial tasks"); see also Forte v. Sullivan, 935 F.2d 1, 3 (1st Cir. 1991)("the circuits are split regarding whether such officials are ... entitled to absolute quasi-judicial immunity when acting within the scope of their employment"); Argentieri v. Clerk of Court for Judge Kmiotek, 420 F.Supp.2d 162, 164 (W.D.N.Y. Mar. 21, 2006)("The Second Circuit Court of Appeals has squarely held that scheduling duties are part of the judicial process and that court clerks performing such tasks are entitled to immunity.")(citing Rodriguez v. Weprin, 116 F.3d 62, 66 (2nd Cir. 1997)); id. ("Inasmuch as plaintiff claims that defendants violated his rights by refusing to acknowledge his motions or to schedule his court proceedings, defendants were assisting judges in performing essential judicial functions. As a result, plaintiff's claims are barred by absolute immunity."); cf. Snyder v. Nolen, 380 F.3d 279, 281 (7th Cir. 2004) (concluding that state court clerk was not protected by absolute quasi-judicial immunity, but also that plaintiff had failed to state a claim for a constitutional violation of right of access to the courts); id. at 291 (finding that state court clerk did not deprive plaintiff of "access to courts" where clerk erroneously rejected plaintiff's petition for divorce and a temporary restraining order against his wife); id. at 293 ("Errors in the course of litigation may justify motions and appeals; they do not support damages litigation under the federal Constitution.")(Easterbrook, J., concurring in part and concurring in the judgment).

Mireles v. Waco, 502 U.S. 9, 11-12, 112 S.Ct. 286 (1991)("[O]ur cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.")(citations omitted); Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1105 (1978)("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.")(internal quotation marks omitted); Pierson v. Ray, 386 U.S. 547, 553-54, 87 S.Ct. 1213, (1967)("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872)."); see also Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435, 113 S.Ct. 2167 (1993)("The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.").

There is also ample authority that judges are specifically immune to suits brought pursuant to 42 U.S.C. § 1983. See Dennis

v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183 (1980)("[T]his Court has consistently adhered to the rule that judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities.")(internal quotation marks omitted); Pushard v. Russell, 815 F.2d 1, 2 (1st Cir. 1987)("The law is well settled that the principle of judicial immunity survived the enactment of 42 U.S.C. § 1983."); Siano v. Justices of Massachusetts, 698 F.2d 52, 55 n.4 (1st Cir. 1983)("[The plaintiff] correctly perceives that he is precluded from bringing a section 1983 damages action against the Justices by the doctrine of judicial immunity.").

It is clear from the allegations in the Complaint that Judge Capineri is being sued for actions taken in his judicial capacity. See Stump v. Sparkman, 435 U.S. at 362 ("[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."); see also Mireless v. Waco, 502 U.S. at 13 ("a judicial act does not become less judicial by virtue of an allegation of malice or corruption of motive")(internal quotation marks omitted); Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496 (1985) ("Such immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the

plaintiff.  Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed.")(citation and internal quotation marks omitted); <u>Dennis v. Sparks</u>, 449 U.S. at 27 (noting that judge had properly been dismissed from the suit on immunity grounds despite allegations of conspiracy); <u>Cok v. Cosentino</u>, 876 F.2d 1, 2 (1st Cir. 1989)("There is no question that [the defendant judge] was protected by absolute immunity from civil liability for any normal and routine judicial act.  This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive.")(citations omitted).

Because Fiore's claims against Judge Capineri are barred by judicial immunity, the Complaint fails to state a claim against him upon which relief can be granted.

### C. Attorney Grady

In order to state a claim under § 1983, a plaintiff must allege (1) that a constitutional right was violated, and (2) that the allegation was committed by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988); <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008)("A claim under § 1983 has two essential elements: the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by

federal law.")(internal quotation marks omitted); <u>Willhauck v. Halpin</u>, 953 F.2d 689, 710 (1st Cir. 1991)("It is axiomatic that in order to state a claim under § 1983, the plaintiff must make a showing that some conduct committed under color of state law has resulted in a deprivation of rights secured by the Constitution and laws of the United States."). It is "[o]nly in rare circumstances that private parties can be viewed as state actors." <u>Estades-Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 4 (1st Cir. 2005)(alteration in original)(internal quotation marks omitted).

With respect to Attorney Grady, "[i]t is well-established that private attorneys are not state actors ...." <u>Murphy v. Maine</u>, C.A. No. 06-062-ML, 2007 WL 2428816, at *2 (D.R.I. Aug. 22, 2007) (quoting <u>Trask v. Campbell</u>, No. Civ. 06-30-P-S, 2006 WL 1030100, at *1 (D. Me. Apr. 14, 2006)(Report and Recommendation), <u>adopted by</u> 2006 WL 1208028 (D. Me. May 4, 2006); <u>see also</u> <u>Polk Cnty. v. Dodson</u>, 454 U.S. 312, 318, 102 S.Ct. 445 (1981)("a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); <u>id.</u> at 319 n.9 (noting that although lawyers are generally licensed by the state, "they are not officials of government by virtue of being lawyers"); <u>Hill v. McClellan</u>, 490 F.2d 859, 860 (5th Cir. 1974)("Lawyers who participate in the trial of private state court litigation are not state functionaries acting under color of state law within the meaning of the Federal

Civil Rights Act; likewise, they are not liable under said Acts.")(overruled on other grounds by Sparks v. Duval Cnty. Ranch Co., Inc., 604 F.2d 976 (5th Cir. 1979); Broadley v. Hardman, No. CA 07-458 ML, 2008 WL 649796, at *3 (D.R.I. Mar. 10, 2008)(quoting Polk Cnty., 454 U.S. at 318).

Thus, Fiore's allegations against Attorney Grady fail to state a claim under § 1983. See Catz v. Chalker, 142 F.3d 279, 289 (6th Cir. 1998)(agreeing that former wife's attorneys in divorce action were not "state actors against whom an allegation of deprivation of constitutional rights under color of law could be properly lodged"); Patel v. Heidelberger, 6 Fed. Appx. 436, 438 (7th Cir. 2001)("a divorce lawyer's efforts on behalf of his client cannot under any foreseeable set of circumstances be considered state action"); Hoia v. Vo, 935 F.2d 308, 313 n.5 (D.C. Cir. 1991)("An attorney does not act under color of law in her or his capacity as representative of a client in court."); Serton v. Sollie, No. 02-61010, 2003 WL 22849840, at *2 (5th Cir. Dec. 2, 2003)("[P]rivate attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983.")(alteration in original).

While a private party may be held liable under § 1983 when he or she conspires with a state actor to deprive a plaintiff of his constitutional rights, Tomaiolo v. Transamerica Corp., 131 F.Supp.2d 280, 296 (D.R.I. 2001), broad conclusory allegations of

conspiracy are insufficient to state a § 1983 claim, see McLarnon, 2009 WL 1395462, at *3; see also Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977)("In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."). Fiore's conclusory claim of a conspiracy involving all Defendants, see Complaint at 10, is exactly the type of broad conclusory allegation of a conspiracy which has been found insufficient to state a claim under § 1983, see Slotnick, 560 F.2d at 33 ("[T]he plaintiff has failed to plead facts supporting these vague claims, and the courts need not conjure up unpleaded facts to support these conclusory suggestions."); see also Ousley v. Town of Lincoln through Its Fin. Dir., 313 F.Supp.2d 78, 85 (D.R.I. 2004)("It is the plaintiff's burden to identify the specific constitutional right infringed. Purely conclusory allegations of conspiracy are not adequate to state a claim ....")(internal citation omitted).

The only specific allegation regarding a conspiracy is Fiore's claim that Attorney Grady and Judge Capineri conspired to deprive him of redress on May 19, 2010, when Attorney Grady allegedly

called the judge and wrongfully obtained a continuance of the
scheduled hearing until July 20, 2010. <u>See</u> Complaint at 6, 9.
Even if true, this allegation fails to state a violation of a
constitutional right because a plaintiff's due process rights are
not violated where the actions of a defendant cause a delay in a
plaintiff's prosecution of his suit, but not the dismissal of his
suit or some other concrete injury, <u>see</u> <u>Heinrich v. Sweet</u>, 62
F.Supp.2d 282, 315 (D. Mass. 1999); <u>Jermosen v. Coughlin</u>, 877
F.Supp. 864, 871 (S.D.N.Y. 1995)("A delay in being able to work on
one's legal action or communicate with the courts does not rise to
the level of a constitutional violation."); <u>see also</u> <u>Sosna v. Iowa</u>,
419 U.S. 393, 410, 95 S.Ct. 553 (1975)(rejecting argument that
state's one year residency requirement for divorce petitions denied
petitioner access to the courts because "the gravamen of
[petitioner]'s claim is not total deprivation ... but only delay");
<u>cf.</u> <u>Aunhkhotep v. Pearson</u>, Civil Action No. 5:09-103(DCB)(MTP),
2010 WL 3879400, at *1 (S.D. Miss. Sept. 28, 2010)("because
[plaintiff] does not allege deprivation of mail delivery, but only
delay in the delivery of his mail, he has not stated a
constitutional claim"). Here Fiore alleges that he was, in fact,
afforded a hearing on July 20, 2010, although he was dissatisfied
with it. <u>See</u> Complaint at 6. Thus, his Complaint fails to plead
that as a result of a conspiracy between Attorney Grady and Judge
Capineri he was denied access to the courts. <u>See</u> <u>Hawthorne v.</u>

Froehlich, 575 F.Supp. 314, 315 (D. Mont. 1983)(dismissing former inmate's claim that he was denied meaningful access to the courts where "the damage was solely that caused by delay in the prosecution of his civil action").

Fiore also alleges that Judge Capineri and Attorney Grady conspired at the February 4, 2011, hearing to deprive him of his personal property which was awarded to him at the June 21, 2006, divorce hearing. See Complaint at 7. However, he pleads no facts which support this conclusory allegation of a conspiracy. Accordingly, it fails to state a claim upon which relief can be granted. See Tomaiolo, 131 F.Supp.2d at 296.

### D. Christine

In order to plead a valid § 1983 claim alleging a deprivation of constitutional rights, a plaintiff must allege that he was injured as a result of state action. Goodson v. Kardashian, No. 10-3976, 2011 WL 167272, at *1 (3rd Cir. Jan. 20, 2011); see also Read v. Klein, 1 Fed. Appx. 866, 870 (10th Cir. 2001). "Thus, private conduct, 'no matter how discriminatory or wrongful,' may not be redressed by a § 1983 claim." Read, 1 Fed. Appx. at 870 (quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S.Ct. 977 (1999)). A private party's mere invocation of state legal procedures is not state action. See id. at 871. Accordingly, because Christine is a private party, Fiore has failed to plead a valid § 1983 claim against her. See Hennelly v. Flor de

<u>Maria Oliva</u>, 237 Fed. Appx. 318, 320 (10th Cir. 2007)(affirming dismissal of § 1983 claim against plaintiff's former wife because "she is a private citizen ... not acting under color of state law"); <u>Donohue v. Pataki</u>, 28 Fed. Appx. 59, 61 (2nd Cir. 2002) (holding that district court properly determined that plaintiff had failed to state a claim under § 1983 because "wife was not a state actor"); <u>Webb v. Webb</u>, 415 F.Supp.2d 678, 682 (S.D. Miss. 2006) (dismissing action because "the alleged deprivation of rights was caused by the improper conduct of [ex-wife]-a private actor").

### E.   David and Charlotte

Similarly, because David and Charlotte are also private actors, Fiore has failed to state a valid § 1983 claim against them. <u>Burgo v. Stratton</u>, Civil Action No. 6:09-1166, 2010 WL 582737, at *3 (W.D. La. Feb. 18, 2010)("It is clear that neither plaintiff's ex-wife ... nor his mother ... are state actors as required for liability under § 1983. To the contrary, these women are merely private citizens who were in no way clothed with the authority of state law."); <u>Tilotta v. Motheral</u>, Civil Action No. V-07-016, 2007 WL 1565363, at *4 (S.D. Tex. May 29, 2007)(dismissing § 1983 suit against plaintiff's ex-wife and former father-in-law "because they are private citizens and clearly not state actors").

### F.   State of Rhode Island

To the extent that Fiore alleges a cause of action pursuant to 42 U.S.C. § 1983 against the State, such claims are barred because

"a State is not a proper defendant for a section 1983 cause of action since a State is not a 'person' as that term is used in § 1983." <u>Brown v. Rhode Island</u>, 160 F.Supp.2d 233, 237 (D.R.I. 2001)(quoting <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989)); <u>see also</u> <u>Brown v. Newberger</u>, 291 F.3d 89, 92 (1st Cir. 2002)("The claims under 42 U.S.C. § 1983 fail because a state and its agencies are not 'persons.'")(quoting <u>Will</u>, 491 U.S. at 71); <u>Young v. A.T. Wall</u>, 359 F.Supp.2d 84, 87 n.1 (D.R.I. 2005)(dismissing claims against State of Rhode Island because "a State is not a person within the meaning of § 1983").

### G. Other Claims

In the first sentence of his Complaint, Fiore states that it is brought "for violations of his 1st, 7th, and 14th amendment rights." Complaint at 1. However, these Amendments limit the powers of the government, not private persons. <u>See</u> <u>Lawson v. Liburdi</u>, 114 F.Supp.2d 31, 37 (D.R.I. 2000)("The Bill of Rights of the United States Constitution limits the powers of the federal government and not private persons."); <u>see also</u> <u>Lefkowitz v. Brooks</u>, 436 U.S. 149, 156, 98 S.Ct. 1729 (1978)("[M]ost rights secured by the Constitution are protected only against infringement by governments."); <u>Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7</u>, 570 F.3d 811, 815 (7th Cir. 2009)("The First and Fourteenth Amendments to the Constitution protect citizens from conduct by the government, but not from conduct by private actors,

no matter how egregious that conduct might be."); <u>Wingate v. Gage Cnty. Sch. Dist., No. 34</u>, 528 F.3d 1074, 1080 (8th Cir. 2008) (stating that the First Amendment's "constitutional guarantee ... only extends to protect citizens from government actions"); <u>Dixon v. Coburg Dairy, Inc.</u>, 369 F.3d 811, 819 (4th Cir. 2004)("Congress has ... notably refrained from extending free speech rights to the private work force."); <u>Rosario v. United States</u>, 538 F.Supp.2d 480, 494 n.10 (D.P.R. 2008)("It is axiomatic that the U.S. Constitution protects only against government action.").

Accordingly, to the extent that Fiore's claims against Attorney Grady, Christine, David, and Charlotte may be based on alleged violations of the First, Seventh, and Fourteenth Amendments, his Complaint fails to state a claim upon which relief can be granted. Such claims are not viable, and they should be dismissed. I so recommend.

## H. **Rooker-Feldman**

Lastly, it bears noting that among the relief which Fiore seeks is an order requiring that his child be returned to Rhode Island for a third-party evaluation and mooting the final judgment of divorce which was entered in his case. <u>See</u> Complaint at 10. Thus, he is seeking to have this Court review and reject the judgment of the Rhode Island Family Court regarding these matters.

See id.  However, because of the Rooker-Feldman[15] doctrine, this
Court lacks jurisdiction to entertain a suit seeking such relief.
See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280,
284, 125 S.Ct. 1517 (2005)(holding that the Rooker-Feldman doctrine
bars federal courts from entertaining "cases brought by state-court
losers complaining of injuries caused by state-court judgments
rendered before the district court proceedings commenced and
inviting district court review and rejection of those judgments.").

---

[15] The Rooker-Feldman doctrine derives from two Supreme Court
decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149
(1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S.
462, 103 S.Ct. 1303 (1983).  The doctrine "provides that lower federal
courts do not have subject matter jurisdiction to review state court
civil decisions.  Plaintiffs must instead seek review through the state
court system and, if necessary, petition the United States Supreme Court
for a writ of certiorari."  Edwards v. Illinois Bd. of Admissions to Bar,
261 F.3d 723, 728 (7th Cir. 2001)(citations omitted).
    In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280,
125 S.Ct. 1517 (2005), the Supreme Court further explained the doctrine
by emphasizing that in Rooker and Feldman:

        the losing party in state court filed suit in federal court
        after the state proceedings ended, complaining of an injury
        caused by the state-court judgment and seeking review and
        rejection of that judgment.  Plaintiffs in both cases,
        alleging federal-question jurisdiction, called upon the
        District Court to overturn an injurious state-court judgment.
        Because [28 U.S.C.] § 1257, as long interpreted, vests
        authority to review a state court's judgment solely in this
        Court, the District Courts in Rooker and Feldman lacked
        subject-matter jurisdiction.

Exxon Mobil Corp., 544 U.S. at 291-92 (citations omitted).  Stated more
concisely: "Plaintiffs in Rooker and Feldman had litigated and lost in
state court.  Their federal complaints ... essentially invited federal
courts of first instance to review and reverse unfavorable state-court
judgments."  Id. at 1521.  Such suits are "out of bounds [and] properly
dismissed for want of subject-matter jurisdiction."  Id.

## V.  Summary

Fiore's claims against Clerk Dupre are barred by the statute of limitations and also because the allegations of negligence against her do not state a constitutional claim.  Judge Capineri is immune from suit by virtue of judicial immunity.  The claims against Attorney Grady, Christine, David, and Charlotte all fail because these individuals are private actors, and in order to state a valid § 1983 claim, a plaintiff must allege that he was injured as result of state action.  Fiore's § 1983 claims against the State fail because the State is not a "person" under 42 U.S.C. § 1983.  Thus, the Complaint fails to state a claim upon which relief can be granted under § 1983 as to any Defendant.

In addition, to the extent Fiore may contend that the alleged violations of his constitutional rights under the First, Seventh, and Fourteenth Amendments provide a separate cause of actions, those amendments only limit the powers of the government, not private persons.  Finally, pursuant to the Rooker-Feldman doctrine this Court lacks jurisdiction to review any rulings or judgment made by the Rhode Island Family Court in Fiore's divorce proceedings.

Accordingly, for all of the foregoing reasons, the Complaint fails to state a claim upon which relief may be granted.  Therefore,  Fiore's Application should be denied and the Complaint

dismissed pursuant to 28 U.S.C. § 1915(e)(2).[16]  I so recommend.

## VI.  Conclusion

For the reasons stated above, I recommend that Plaintiff's Application be denied and that the action be dismissed pursuant to 28 U.S.C. § 1915(e)(2).  Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/  David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 16, 2011

---

[16] In relevant part, 28 U.S.C. § 1915(e) provides:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
    (A) the allegation of poverty is untrue; or
    (B) the action or appeal--
        (i)  is frivolous or malicious;
        (ii) **fails to state a claim on which relief may be granted**; or
        (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2) (bold added).